The Honorable, the Judges of the United States, for the Court of Appeals for the Fourth Circuit. OAOAOA, all persons having any manner or form of business before the Honorable, the United States Court of Appeals for the Fourth Circuit, are admonished to draw nigh and give their attention where the Court is not studying. God save the United States and this Honorable Court. Please be seated. All right. We'll begin with Holt v. Hull. And Mr. Baez? Yes, sir. We're happy to hear from you, sir. Yes, sir. Good morning, Your Honors. May it please the Court. Jesse Baez for the Appellant, Michael Warren Holt. At its essence, Your Honors, what this case boils down to is it's about a man who sat in jail for 19 additional days because a state actor failed to do what both Virginia law and basic fairness require. I'd like to go into a little bit about the factual timeline that Mr. Holt experienced. On February 17th, 2022, Mr. Holt was arrested in Middlesex County on charges of thefts of oysters and instigating trespass, and he was subsequently released on bond. On September 30th, 2022, Mr. Holt was arrested on separate charges in Gloucester County, where he was held at Northern Neck Regional Jail. On October 6th, 2022, additional charges were filed against Mr. Holt through direct indictment for violation of a protective order, where he continued to be held at Northern Neck Regional Jail. On October 17th, 2022, Mr. Holt was convicted in Middlesex County and sentenced to two months. His bond was revoked at that point in time, making him eligible for jail credit. On March 21st, 2023, Mr. Holt entered a plea deal in Gloucester, where his charges were either null-pros or deferred, and he was subsequently released on bond. Two days later, on March 23rd, he was transferred from Northern Neck Regional Jail to the Middle Peninsula Regional Security Center. It was on March 24th where the Middle Peninsula Regional Security Center sent a formal request for the jail credit from Northern Neck Regional Jail. And the response from Northern Neck was, jail credit may begin on March 22nd, 2023. How does all this get to be a constitutional claim? Well, sir, I think it's a constitutional claim in a couple of different respects. And the majority of our argument relies on the Durkin decision that we cite in our brief. And they articulate it best. And what it says is, the right to credit for jail time awaiting trial on a bailable offense and pending appeal is not a matter of legislative grace, but it's a right constitutionally mandated, available to state prisoners as well as federal prisoners. The district court in the Durkin decision found that there was a liberty interest, and on appeal to the circuit, the reasoning rationale was upheld. And the rationale behind it is that there's a liberty interest because when such credit was drawn, the court found the sentence that... It sounds like you're trying to draw us into the details of state prison administration. Well, sir, I... Why should we be sitting here trying to micromanage the state's handling of the transfer of credits? Well, Your Honor, this isn't merely jail policy. And again, this goes to fundamental liberty interests that the district court found in Durkin. And that was subsequently... The liberty interest, though, was... It was found in Virginia law, which provided for the transfer of credits only for the same offense. But Virginia points out that in this case, the Middlesex charges and the Gloucester County charges were for different offenses. And so how does one derive a liberty interest from state law? Normally, the liberty interest and property interest are drawn from state law. And in this case, the state law says you may have a liberty interest transfer where the same offense is involved. But here, the different offenses are involved. And so I'm wondering why. So... That very basic step of establishing liberty or property interest derived from state law. How do we get that? So is Your Honor's question is because this is a state prison matter, how a federal liberty interest is derived? No. You have to... Normally, a liberty or property interest is the predicate for your due process claim. Yes, sir. And the liberty and the property interests are derived generally, as the Roth decision and others made clear, from state law. And when one looks at the state law, one realizes that the Northern Neck prison facility and the Gloucester prison facility, there were different charges there for different offenses. And so given the way in which state law frames the liberty interest, I'm not sure how you establish that first step. So as respect to Northern Neck, excuse me, as to Middle Peninsula Security Center, when they requested the jail credit, effectively it was a denial. Because they said that the jail credit started about a day or two prior to his transfer to Northern Neck Regional Jail. And so again, I keep circling back to Durkin, that right to credit for jail time is not just a state issue. This is a federal issue, and it's derived from the 14th, 5th, and 6th Amendments. Do you agree, just to break down the question a little bit, do you agree that there's no state law right to the transfer of these credits? I would respectfully disagree on that point, Your Honor. And again, I would go back to the statute, 58... Start there. Okay. I take you'd be making two arguments. One, no, no, no, no, you should read the statute in a way that gives us an interest. So that's one possibility. And then the other possibility I take is your fallback argument, which is even if not, the federal constitution guarantees such an interest, even where it does not fall within the state statute. So why don't you start by telling us why you think the state statute, and I'll preface it by saying it doesn't naturally suggest that you're right, why we should read it in such a way to generate a statutory right, from which we can then talk about the federal constitutional issue. So if we look at this from a perspective, a statutory interpretation, this statute is very broad. Again, any person who is sentenced to a term of confinement in a correctional facility shall have deducted from any such term all time actually spent by the person in a state hospital for examination purposes, treatment, prior to trial, in a state or local correctional facility awaiting trial or pending an appeal, or in a juvenile detention facility. And, Your Honor, if you... So why should we think that the first part and the second part aren't connected? So the natural way you'd read that is that if you're sentenced after trial, that what's done before trial is the same offense. That seems how the state of Virginia, excuse me, the Commonwealth of Virginia, has understood that statute, right? That seems to be the natural read of the statute. So help me understand why we ought to sort of deviate both from how the Commonwealth understands its own statute, which maybe we could do, but why we would do that based on sort of statutory interpretation principles. Sure. And I do want to circle back to the facts just for a very brief second. So you're welcome to do anything other than what I've asked you if you like, but I'd start with my question maybe and then come back to somewhere else. But so I want you to start with, and then happy for you to talk about the facts eventually. You've talked about them a fair bit already. But why don't you go to the statute first for me and help me understand, based on statutory interpretation, like why you think that, and I understand this isn't your whole case, but why you think that creates a state statutory right to the transfer of the credits with unrelated charges. I think that if the General Assembly's intent was to narrow what credit was received for which charges, they would have put this in the statute. But, again, such credit for time shall include any time spent in pretrial confinement or detention on separate, dismissed, or no-pros charges that are from the same act or violation for which the person is convicted and sentenced to a term of confinement. Now, I want to circle back to the factual piece, right? When Mr. Holt was ---- That's the extent of your argument on why the statute actually creates an interest is what you just said. If I'm writing an opinion, I can say the entire argument is what you just said. Yes, sir, because if there's no cognizable liberty interest, obviously there is no case here. But going back to the facts, when Northern Neck Regional Jail held Mr. Holt, it was directly related to the charges from Middlesex County because he was out on bond in Northern Neck Regional Jail's jurisdiction. So had the jail credit been released, Mr. Holt would have gone out that same day. It's not as if he was being held on separate charges. It was those original charges from Middlesex that was holding up the process and keeping him at Northern Neck Regional Jail. All right, so now I'm understanding that you're actually making three arguments. I didn't understand. So one argument you're making is that the statute applies equally to whatever charges are at issue. Now you're making a factual argument that says these are not unrelated. Correct. These are in fact the same.  And then, so have I explained that one? Because I didn't gather that one from the brief. So how about help me understand that argument? That even if you read the statute as it would most naturally be read to not apply with unrelated charges, why do you think factually the two sets of charges are not unrelated? So Northern Neck Regional Jail reaches out to, excuse me, Middle Peninsula reaches out to Northern Neck Regional Jail saying, hey, give us your good time credit for the charges he served out there. Good time credit only begins on March 22nd. By the time that request was made, Mr. Holt was already out on bond for the Gloucester charges. So everything relates back to that original set of time that he served for theft of oysters and instigating trespass. The more I hear about this, the more I feel like I'm being drawn into the minutia of state prison administration. And I don't understand myself the constitutional pathway to get there. The procedural due process claim is grounded in state law. And I read the statute naturally. So then I'm saying, well, I mean, what is the federal constitutional claim here? Is it a substantive due process claim? Well, I think it's two parts. I think it's the procedural due process claim. Yes, but the procedural due process claim, you can't just concentrate on process. You have to concentrate on whether there's a liberty interest or a property interest. So that's the procedural due process claim. Now, you can go directly to a substantive due process claim and you can say that this is so outrageous that it would be a violation of substantive due process. But, you know, whether one agrees with the administrative system or not, I'm not sure how this reaches the level of outrage. You know the NEC facility wants to transfer the credits, wait until all charges are adjudicated. And maybe you like that system and maybe you don't. But to say it's a substantive due process claim seems a stretch for a disfavored doctrine. And the Fifth Amendment violation, the Double Jeopardy Clause, applies to punishment twice for the same offense. But the whole point we're making is that the Northern NEC offenses and the Middle Peninsula offenses are not the same offense. They're different offenses. And so I'm not sure how Double Jeopardy kicks in. See, I'm having trouble. Once you don't establish the liberty interest, I'm having trouble seeing how this is a substantive due process and how this is a Fifth Amendment violation. I'm not sure how it's a Sixth Amendment violation. What we have, because the Sixth Amendment applies to a criminal offense. So what we have, it seems to me, is a negligence question. If that, it may be a perfectly rational way of proceeding the way the Virginia system has it. But normally negligence on the part of federal officials or state officials doesn't give rise to a constitutional claim on the 1983. So as my colleague points, there are two different inquiries here. And as an equitable matter, maybe he deserves the 19 days. But I'm just not sure, as a legal matter, how we get there. I suppose I could figure something out if I had enough time. But maybe you could help me in your rebuttal argument. I'm going to ask my friend Judge Gregory if he has some questions for you, first of all. Yeah, I do. I want you to finish up on what Judge Richardson was explaining, that third element you were saying. He actually was serving some of that time for the Northern Net offense. Go ahead.  So I'm going back to Judge Richardson's and I's conversation. Right. Mr. Holt was held at Northern Net directly because of the refusal to release the good time credit from the first institution. So it was from the time that he already served and banked from that first level that he was entitled to under, I would argue, the Constitution and state law. And Judge Wilkinson, to go back to your point, this is more than just administrative policy. Essentially what the state is saying here is that we can deny a person's constitutional right to good time credit simply for budgetary constraints and budgetary reasons. And I think that is shocking to the conscience, frankly. Well, I'm not sure they've denied it. It's a question of the timing of the transfer of credits. The Northern Net facility wants to wait until all charges are adjudicated before it transfers the credits. Right, but that has a real-world impact on the defendant because, as in this case, it resulted in 19 days of overdetention and time that wasn't credited to any offense. Once his cases were all adjudicated and resolved. And I realize my time is up. I'll reserve several minutes for rebuttal, if that's okay with the court. Good morning, judges. May it please the court. Jeff Rosen on behalf of the appellees with the firm of Pender and Coward. Judges, we're here on the issue of whether the Northern Neck Regional Jail's policy to retain jail credits creates a violation of Constitutional or state law. And the Virginia Code and the case law is quite clear, as Your Honors have alluded to. The refusal to transfer the pretrial credit time Mr. Holt served at the Northern Neck Regional Jail for charges of possession of controlled substances and strangulation, he was held in the jail from October 6th to March 22nd. There was no Constitutional statutory right to credit for pretrial detention served for unrelated charges. And so I don't understand counsel's argument that he was incarcerated related to the Little Peninsula charges. From the timeline, he was arrested on February 18th, 2022, on the charge for Middlesex theft of oysters and trespass and bonded out. That was February 18th, 2022. He was now charged in Gloucester, and the Northern Neck Regional Jail is a regional jail from Gloucester. Until September 30th, 2022, when he was incarcerated originally in Gloucester Jail, then transferred to Northern Neck, which is their regional jail. So he was bonded out in February on the Middle Peninsula charges, and then in September he ends up in Northern Neck Regional Jail and he's serving time only on those charges, the strangulation charges. And that's where he served from October 6th to March 22nd. Then he was released on March 22nd on those strangulation charges, on a bond, and then he was transferred to Middle Peninsula, where he served his charges. The charges are unrelated. They're totally unrelated. And there's a large gap of time between the time he bonded out on the oyster charge and the time he served. And so the Northern Neck Regional Jail's policy was to preserve the charges, because in the disposition of the strangulation charge, the disposition was deferred, but he had to comply with certain conditions for a year, but he had 12 months. I would say the interest of the Northern Neck had a facility, they had a practice of waiting until all charges are resolved before they transferred credit.  Okay, and what is the state interest behind that? What is the state interest that's served by having the transfer of credits await the resolution of all charges, including those at the Gloucester Jail? Well, I think in the superintendent's affidavit, he said it was financial because the jurisdictions that pay for the Northern Neck Regional Jail have to pay for that. And if you transfer the credits, then they lose that money. So it was a financial interest, first of all. Second of all, Mr. Holt. So I think I understand what you're saying there, but can you explain the last part of that sentence? Sure. They're losing the money? Yes. The point being they're losing the money if that suspended sentence, or if he then has to come back to the Northern Neck to serve more time? Correct. Correct, Your Honor. And he had 12 months suspended on these charges.  And so the theory there is that if something happened and he was then forced to serve those 12 months out, under the policy as it was currently done, he would actually serve 19 days less than 12 months. Exactly, Judge. And that would effectively mean he serves 19 days less because he would get credit against it, but also means Northern Neck pays 19 days less worth of incarceration. Exactly, Judge. All right. That makes sense. Thank you.  Exactly. And so that time was pending for Mr. Holt. Had he violated probation, he had a year hanging over his head. Do you know if this is a consistent policy? I know Northern Neck seems to adopt this approach. Is this the approach that's adopted uniformly in the Commonwealth, or is this sort of a choice that Northern Neck makes? Well, other facilities do the same thing, Judge. Not all of them, but I think Northern Neck is. It's a kind of rural jurisdiction. Some do and some don't. Some do and some don't. Right, exactly. It's not uniform, but I think it's probably 50-50 from my experience. But I think that it's certainly he's not the only jail that does that. And as I said, I think it's an So you're saying that if he had no suspended time, you would have given him credit? I didn't say that, Judge. Well, you said that that's what they were holding him for just in case he came back. Well, I think if there was a disposition, if there was a final disposition, they would have given him the credit. Yes, Judge. Final disposition of what? Of those charges, the strangulation charge. If he was found not guilty or if there's a final disposition, they would have released the charges. A final disposition? That was a disposition. Well, no, at the It was a disposition. He could appeal, right, to the circuit court. That was a final disposition. Well, there was time over his head, Judge. I mean, it was potential that he was going back to jail. He couldn't appeal? You can't appeal a sentence that you have suspended time? You're sentenced to a suspended sentence? You can't appeal? You can. Well, there was a final disposition then, wasn't it? You used a term. Right? Well, I mean, it was. That was a final disposition, Judge, as far as that goes. It was a final judgment. Final judgment. Final judgment. Final judgment. Disposition need not be a judgment, right? That's correct. Those are two different ideas. I appreciate your assistance. Yes, Judge, that's correct. So you were going to suggest, in your good colloquy with Judge Richardson, that there was the financial interest was one thing, but then you said there was another interest in the way that the Northern Neck facility handled transfers? Well, it was, according to the affidavit in the record from the superintendent, it was financial and the credit was not released until the underlying charges were disposed of. But I was thinking, did you say that you would get, if you transferred the credits, you would lose retroactively the monies that would be allocated to you because, wait a minute, you don't get the credit for that because now that time is credit to another jail. Didn't you say that that would be a financial impact? Yes. Well, yeah. So it's not just, like, so it's, you lose money because, well, we've got to keep these credits because we need to keep the money. Had no penalogical reason at all. It's just all about money. It's not the dollars, right? Well, that was the, that's what, that's the evidence that, why this policy is in effect, yes. But that's a valid state interest. But the whole idea of the effect of the justice is that people ought to get credit for the time they serve. But now what's now being surmounted by that is your financial interest in making sure you don't lose money you spent. So, I mean, are we putting something that's ahead of justice here? Because the overall thing, Virginia, seemingly the statute generally wanting people to get credit for time served. And we can say whether or not, whether they're meant to be and what those things are. But we found that now it's about money. And I guess money has a lot of things. He didn't get bonded. He didn't have the choice to be bonded out. Well, he originally was bonded out on the oyster charge, on the first one. Then I think he was bonded out then on the second one as well. Okay. I think he was eventually. Eventually he was. Eventually he was bonded out. Exactly, Judge. Doesn't it hinge on, well, I mean, your opponent's argument would be far more forceful if we were talking about the same offense. Correct. I mean, what's different about this case and what I don't think leads to an easy claim of deprivation is that these are different offenses. And he's being held for one set of offenses in Gloucester and another set of offenses for Northern Neck. And that point on state law and constitutional law, it makes a big difference. It does, Judge. And, in fact, if he had been remanded back for a probation violation on the strangulation charges, he would have gotten the 19 days credit. He didn't lose it. They were in reserve. You know, I think I would be more receptive to your opponent's argument if we were talking about a denial of credits for the same offense. Exactly. I think that's the statute. I have a question for you. Sure. What if he spent a year in prison, in jail, waiting on the trial of domestic violence and strangulation, and at the end was found not guilty? You would say he would get none of that credit to the first charge. None of it. A whole year spent found not guilty, he would get no credit under your reading of the statute. Is that right? That's how the statute, Judge. That's what the legislature passed. That's how it reads. But that's the whole point, isn't it? That would be denial of process. That's rather draconian, isn't it? Well, I think if it's on the same charge, Judge, I would think so. You should get the credit when you're in jail on the offense you committed. If there's two charges, then that's two separate charges. Yeah, but an innocent person spent time a whole year for something that's adjudicated that he did not do. And then you're saying he still has to go back and serve. There's something wrong with that. And the Constitution doesn't speak to that. That's rather bizarre. But it speaks to your money interest. Well, Judge, I think the case is pretty clear that the statute applies to the specific charge. And I think that's what the case is. And, in fact, we cited many cases in our brief both in western district and state courts that filed the same result. On occasion, I guess it can appear to be oppressive, but that's how the legislature in Virginia decided to do. And I think, you know, in the- Virginia legislation is not the final word about the Constitution, though, is it? Sure. No, it's not. But there has to be a subject of liberty interest that's affected under state law to get to the first base. It's very hard, Kristofan, to blow up into a matter of constitutional law something, an administrative scheme, that at least makes some rational sense to me where we're talking about different offenses. And I don't see the constitutional gateway into all of this. Substantive due process, you know, whatever you think of this scheme, it is not shocking to the conscience of humanity or the kind of test we take for substantive due process violations. And then you go down fifth and sixth and all of the amendments, and they don't fit. And if you read the statute the way it's supposed to be read, you don't have a liberty interest for what would normally be the most logical claim. The claim that would most logically fit would be one of procedural due process. That more than substantive due process or fifth or sixth amendment, that is the one that would apply. And yet the predicate for all of these, as the Supreme Court's made clear time and time again, is that there has to be a property or a liberty interest grounded in state law. That's where we get it. We don't pick it out of thin air. And the state statute just doesn't provide a liberty interest. It would provide a liberty interest if we were talking about the same offense. I agree, Judge. It does not provide a liberty interest where we're not talking about the same offense. And there's no case that we've come across to support a procedural due process claim under these facts. Can I ask a recordish question? Absolutely. Maybe two of them, if you don't mind. Sure. If we had Judge Gregory's hypothetical, right? So spent one year and then instead of the plea here, but we had a not guilty finding, I take you to say the statute would not apply such that he would be entitled to that credit in the middle. Peninsula case. Middle peninsula case. So the statute doesn't apply. But I thought I understood you earlier say, but Northern Neck in that scenario would actually transfer that year credit because there would have been a final disposition. He's been found not guilty. Correct. So just so that I understand the framework, the statute wouldn't apply. So there might not be a statutory right to those credits. But Northern Neck, as a matter of policy, had he been found not guilty, would have indeed transferred those 365 days worth of credits to the next facility.  Okay. And that's in the record? That policy is in the record? Yes. You're right. Yes. Right. And they would have definitely done that. Yes. Right. And this is only because you had a suspended sentence. Yes. Correct. Correct. That was the only reason, not the money. Well, no. I mean, that was the policy. The policy is until the final disposition. Once the final disposition occurs, then the credits will be transferred. But if the disposition is still pending, then they will be held up in the event that he has to come back to serve the sentence, to serve the sentence on that other charge, in this case strangulation. So if he was still serving it after that one year, you would give him credit a year later? Yes. Correct. Okay.  The other factual record question, I'm just trying to make sure I understand.  The commonwealth system. So he pled to strangulation on the 22nd, March 22nd. And then it appears he then receives a PR bond, a personal consequence bond. So on the 22nd, he pleads. He gets some deferred slash suspended sentences. I'm not actually sure which is exactly accurate there. Maybe you can answer that. But then help me understand, why is he getting a PR bond? What's the point of that? I mean, that suggests that he's still under supervision of some sort. I'm just trying to understand why after a plea and an imposition of a suspended or deferred sentence, why he then got a bond as opposed to just getting released. Do you understand what I'm saying? I understand your question, Judge. I can't answer that. Maybe his counsel could answer that. I can't answer that question. But as my understanding, normally if you have a deferred finding, that would be a disposition. You would not need a bond. I agree with you on that issue. I can't answer that. But I think, you know, I think this has been an interesting argument, and I think that you've hit the nail on the head, Your Honors, that there is no substantive due process. There is no claim. The statute is clear. And I was kind of, I didn't understand the appellate argument. I don't think there's any constitutional or state claims for the plaintiff. Well, I think there's a danger in having substantive due process rush in, whereas procedural due process clearly doesn't apply. And, you know, the 14th Amendment is basically at its heart a procedural vehicle. It doesn't confer substantive rights. And the Supreme Court has been making that increasingly clear. And so having substantive due process just rush in, in all those instances where procedural due process is not applicable, is to sort of blend the two things in a way that really makes 14th Amendment jurisprudence something of a mishmash. I mean, it makes it doctrinally confused in a way that you just can't merge procedural and substantive due process in the attempt that's being made here. I think if procedural due process doesn't apply, and it doesn't, then the argument that, oh, well, substantive due process applies in the alternative, I think that's a slippery slope. I agree with you, Judge. I do. Can I, I'm going to ask a slightly different version of the question I just asked you, and you can welcome to just say I have no idea. I'll try to do my best, Judge, to answer if I can. So as I understand, maybe this is the difference between a deferred adjudication and a suspended sentence. But it appears to me like a suspended sentence would be you get 12 months, but 12 months are suspended. So you don't have to spend any time in jail or in prison or jail. But what it seems like happened here instead is there's a deferred prosecution. And so the resolution here was to say we're going to hold these charges. You've actually not technically pled guilty yet. We've not entered a guilty plea because we're going to wait a year. And if you do what you're supposed to for a year, then we will find you guilty, impose a 12-month sentence, and suspend six months of those, presumably meaning then he's going to have to show back up and serve six months of custody on the strangulation charge. Is that a fair way of reading this? I think you're correct, Judge. I think that's correct. And it might look different if there was a suspended sentence because then you've actually had a disposition. And that's actually a judgment and a sentence. But what we have here is a deferred prosecution. We're saying we're just going to hold all this. If you act like you should for a year, then at that point we're going to reduce the charges from strangulation to domestic assault battery. We will then enter a plea of guilty on that charge. We will then impose a sentence. But in March of 2023, none of that had happened. And that's sort of the situation we've got, which is a little – I was thinking, I will confess, I was thinking this is a suspended sentence, but it looks like that's not. It's not. You're right. Exactly right, Judge. Right. The court held it in advance for a year pending the defendant's good behavior, basically. And then in a year, if he had no further problems, then they would take and impose the final disposition. Thank you, counsel. Sorry. No, that – any further questions? If there are any, I would ask the court. Hold on a minute. Sure, sure. Judge Gregory, do you have further questions? Are you okay? Okay. Thank you very much. You're quite welcome. I would ask you to affirm the district court's decision. Thank you. And we'd now like to – Mr. Baez has some rebuttal time, and we'd be pleased to hear from him. Yes, sir. I don't want to distract you off the gate, but can you, like, help me understand what actually happened here? Yes, sir. Am I right to think of this as – this was not a suspended sentence in the way we might naturally think of. You got 12 months, eight suspended, so you only served four. Correct. This is a full deferral of the prosecution. Correct. And so the plea agreement's actually attached to the complaint. It's in the record JA-13. But essentially, Your Honor's reasoning is correct. So the intent, from my understanding, between defense counsel and the Commonwealth was, okay, we're going to reduce some of these charges. We're going to kick some of these charges out for one year. You do what you're supposed to do. No new charges, be of good behavior. These will get reduced. You've got time banks, and obviously they agreed to a PR bond. So just so I understand, and maybe this has already happened, but what would have – if everything went as it should, he did everything he was supposed to and everybody lived up to their bargain, a year after, so March of 2024, he would have showed back up in the Commonwealth Court. They would have then entered a finding of guilty, and they would have then imposed a 12-month sentence with six months suspended. Correct. And he would have then been required under that sentence to serve six months. Minus however many good times credits he's got in New Orleans. Correct. And my understanding from the record is that he had already served enough time so he would not have to serve any additional future time when he came back for the one year. So he had already – because he was there from October to March, that effectively was the six-month sentence that was going to be the unsuspended portion of the strangulation, now domestic, assault and battery charge. Yes, and giving Mr. Holtz an opportunity to have some of these charges reduced and no prost. But your reasoning is correct from my understanding of the record, sir. Thank you, counsel. Yes, sir. But just very briefly, I want to turn – I'm sorry, one more thing. Yes, sir. I'm sure that Judge Wilkinson will give you an extra minute. Do you agree, your colleague, in response to Judge Gregory's good hypothetical, had your client been found not guilty instead of this deferred prosecution, do you agree that the Northern Act policy would have transferred whatever credits there were to the – what's your charges? Under their unwritten policy, yes. That's what it would appear that had he been found not guilty or had these charges been resolved in some other way, then that would have triggered the release of credit from Northern Act Regional Jail. But, you know, going back to the hypothetical posed by Judge Gregory, there's a real risk here, right? He easily could have sat for one year as opposed to 19 days. What could he have done? The jail didn't provide any sort of procedure to challenge the failure to release the good time credit. So, you know, respectfully, I think this does shock the conscience, and I think there's a real risk of Mr. Holt and other defendants' constitutional state rights to this credit under this system. Well, you know, we're accustomed to looking at constitutional law as a sort of first option and everything, but not everything that appears to be less than ideal, not every procedure, is a matter of constitutional deprivation. Sometimes one can rely on state law if there is an infirmity here. It's not wrong to say that it belongs to the domain of state law to correct it. The problem I have with the case is that it is jumping into constitutional law without proper state law predicates. And if there is a difficulty with the way the prison administration takes place, it is not remiss to say that is something that should be open to corrective, but the vehicle for correcting it should be state law. I have a big problem with constitutionalizing this area and drawing federal courts into the minutia of state administration. And I don't see the constitutional pathway to all of this, and I don't think it is unjust to look to the law of Virginia to iron out administrative problems within its own penal system. And that's, to be honest with you, where I come from on this. I just don't see the constitutional pathway, and it may be or it may not be that the system is as equitable as it should be. It may be that the transfer of policies are not what they should be. But there are state courts out there, and there is state law out there. And very often we have over-constitutionalized this whole area and taken away the domain that is properly reserved to the states. So going to that point, Your Honor, and I want to just read very briefly from my brief. There is a citation to an opinion of the Virginia Attorney General that it was the intention of the General Assembly that an inmate be given credit for all time spent in jail awaiting trial, regardless of the jurisdiction, so long as there's no duplication. I have to respectfully disagree with Your Honor. I think this is 19 days of a man's life. It could have easily stretched to a year under different circumstances. So I think we're talking about fundamental liberty interests that are protected under the Constitution. Do you have a different view about the 14th Amendment than my good friend Judge Wilkinson in terms of what it was meant to do? Well, I believe the 14th Amendment was meant to provide process so a defendant similarly situated to Mr. Holtz could challenge this withdrawal. As a matter of fact, the 14th Amendment was meant to look at states who had just come back to the Union in terms of those persons, free persons, free men and women, who in terms of no way they could rely upon the state's traditions and policies. And that's the only hope they had was the 14th Amendment to make sure. I can't think of any higher duty of the Constitution to make sure people are not, liberty is not taken away in terms of incarceration. So I think it's squarely within the 14th Amendment aspect of its founding. And the Supreme Court, of course, after Reconstruction in terms of Slaughterhouse and Crescent and all those cases that came along and even Plessy did a disservice to the 14th Amendment. But I think we've got a better view of it now since post those things. But it still exists to protect and you just can't at will. And I think counsel said unwritten policy. How do we know when it applies or how it applies? That is a procedural question. Yes, sir. I thought Judge Wilkinson gave you a good window to talk about the 14th Amendment broadly, I think. But you argue the case the way you want. Yes, sir. And I would concur with your sentiments. And, again, no process was provided to Mr. Holt. And looking at the truth. I understand, but it's a two-part inquiry, Fran. And we jump to the question of process without asking the way, without taking cognizance of the way the framers of the 14th Amendment went. There has to be a deprivation of liberty or property. And then the Supreme Court says, how do you decide that? And I think that the way you decided under the Roth decision and its many progeny is by looking and finding those interests rooted in state law. But we've been over it and over it. Yes, sir. Judge Gregory, as always, makes some good and powerful points. I think there are points to be made, perhaps, on the other side of it. But maybe we'll just, unless my colleagues have further questions, maybe we'll just let it rest with thanks to you for a very spirited and well-done argument. Yes, sir. Thank you for your time today. All right, Judge Richardson, do you have further questions you wish to add? I do not. Judge Gregory? No, sir. All right. Thank you. I'd like to come down and say hi to you. Yes, sir.
judges: J. Harvie Wilkinson III, Roger L. Gregory, Julius N. Richardson